THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
JOAQUÍN PÉREZ, Defendant and Appellant.

No. 5557.. Argued December 19, 1934.—Decided June 24, 1935.

*E. Martínez Avilés* for appellant.   *R. A. Gómez, Prosecuting Attorney,*
and *Luis Janer, Assistant Prosecuting Attorney,* for appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Joaquín Pérez was convicted of burglary in the first degree
alleged to have been committed by entering a house in the
nighttime with intent to commit rape.  María Martínez was
his sweetheart.  He had been courting her for more than two
years.  His attentions were not unwelcome to her nor to her
family.  During the earlier part of the night in question he
had been calling at the Martínez home and left the house
about 8 o'clock.  María was the eldest of thirteen unmarried
children.  Her father, Zoilo Martínez, was at work in another
part of the Island.  With him was Juan Gaspar, a lad of
fifteen.  The ages of the other children who were at home
at the time, ranged from two to thirteen years.

The testimony of María and of her mother tended to show
that María was sleeping in a bed with three of her younger
sisters and that her mother was sleeping in an adjoining or
nearby room with another child or other children; that the
kitchen door and a window in the kitchen were closed but had
not been fastened; that a door between the kitchen and the
dining room was also closed; that Pérez about 12:00 or 1:00
o'clock passed through the kitchen and dining room into
María's bedroom and was removing her clothing when she

awoke and cried out; that when the mother awoke and appeared on the scene, Pérez was in the doorway between the daughter's room and the dining room; that the mother also cried out and called to the neighbors; that Pérez confessed his fault, promised to marry the girl in the morning and asked the mother to say nothing to the father.

José Montalvo, a neighbor, son-in-law and tenant of Martínez, who responded to the call of Mrs. Martínez, says that when he reached the Martínez house Pérez was in the *sala* where he admitted his error, told the mother not to worry and promised to marry the daughter. On cross-examination he said that he was awakened by his wife who had heard the cries from the Martínez house. Later he said he had heard María call out to her mother: "Mama, there is a man in here." And that the mother answered: "Call Pepe," and witness said: "Don't worry, I am coming;" and that he heard the cries from the Martínez house after he had been awakened by his wife. The mother also testified that another neighbor, Juan Rodríguez, had come in response to her outcry, but Rodríguez was not produced as a witness.

It was the custom of the Martínez family to sleep with a kerosene lamp burning and the house was not in darkness but dimly lighted. The case was presented to the district attorney the next day after Pérez had refused to marry the girl.

Pérez testified that he usually called early in the evening four or five times a week and on the night in question had made an appointment to return later to meet María, who had agreed to leave her home and go away with him; that he kept his appointment and María came out of the house through the kitchen window to meet him in the alley; that while they were talking in the alley the mother awoke and called to the neighbors who answered her but did not come over to the Martínez house; that witness and María then entered the Martínez house where Mrs. Martínez was weeping on the balcony; that witness told her not to worry; that

he would make arrangements the next day to marry María; that the next day he was unable to make the contemplated arrangements and later had promised to marry María within two months.

Another witness, a nurse employed by the municipality, testified that on passing by the Martínez house on her return from a professional visit about half past eleven, she saw Pérez and María in the alley between the Martínez dwelling and the Montalvo house.

The foregoing facts suffice to distinguish the instant case from *People* v. *Ramírez*, 41 P.R.R. 742. Taking as true the testimony for the prosecution, it is not enough to support a conviction. However reprehensible the purpose and conduct of Pérez may have been, the surrounding circumstances as a whole, tended to negative rather than to establish an intent to commit rape. His conduct may have been prompted by a desire for sexual intercourse, but there is no evidence of an intent to accomplish his purpose by the use of force or violence. Unless defendant was guilty of intent to commit rape there was, of course, no burglary.

The judgment appealed from must be reversed and the defendant discharged.